## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Lawson P. Mosteller, Jr., and
Cathryne M. Garrett, Co-adm'rs of
the Estate of Bette V. Mosteller,
Deceased

v.

Life Insurance Co. of Virginia

September 20, 1985

Case No. (Law) 8873-S

By JUDGE DOUGLAS M. SMITH

On August 9, 1985, the Court heard evidence in the above captioned cause by way of stipulation of facts presented by counsel and by oral evidence from witnesses, along with certain exhibits that were also stipulated by counsel. At the conclusion of the case counsel asked for an opportunity to present a memorandum of law, which was granted and having reviewed these memorandums the Court is now prepared to render its decision in this case.

This suit involves the estate of Bette V. Mosteller suing The Life Insurance Company of Virginia for double indemnity as a result of a group insurance policy that would pay double indemnity for death by accidental means.

It is uncontradicted and borne out by all of the evidence that the deceased, Bette V. Mosteller, met her death in an automobile collision on I-64 when her vehicle and another vehicle met in a head-on collision.

The defendant insurance carrier appears to place most of its defense on the grounds that the plaintiffs have not shown that the deceased died from "accidental" means. Their theory is that the deceased "voluntarily" drove her vehicle on highway I-64 in the wrong direction and, that the natural and probable consequence was that

she would be killed. He cites a number of cases beginning with *General Accident, Fire and Life Assurance, Ltd.* v. *Murray*, 120 Va. 115 (1916), for the authority that there is to be no presumption of accidental means to aid the plaintiff in his proof in this type of case. However, the Murray case is easily distinguishable from the case at bar for the question involved in *Murray* is whether or not the deceased died from natural causes, to wit: "the erysipelas germ entered his body," thus causing the disease that led to his death or whether on the other hand, erysipelas resulted from an accident because the deceased had a rubbing of his foot by his shoe. The Court said that the deceased was entitled to no presumption that this was an accident. The case of *Florence Smith* v. *Combined Insurance Company of America*, 202 Va. 758 (1961), sets forth the principle relied upon by the defendant when the Court defines accident as "the generally accepted rule is that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury." It sets forth the principle that even though the death in a sense is unforeseen or unexpected but results directly from the insured's voluntary act and aggressive misconduct, then it is not an accidental death under these policies. The Smith case involved a criminal who was in a gun battle with police officers and was burned in a fire as a result of tear gas bombs. The list of cases cited by the defendant which I will set forth in short form, involved a death by gun shot in a fight with the aggressor being shot; *Wooden* v. *John Hancock*, 205 Va. 750 (1965), which cites the Smith case *supra*; the death of the deceased was caused by gun shot when the deceased was the aggressor; *Byrd* v. *Life Insurance Company of Virginia*, 219 Va. 824 (1979); death by hanging was involved in two cases *Montgomery* v. *Home Insurance Company*, 662 F.2d 1040 (1981), and *Runge* v. *Metropolitan Life Insurance Co.*, 537 F.2d 1157 (1976), and the "Russian Roulette" case of *Nicholas* v. *Provident Life & Accident Insurance Company*, 457 S.W.2d 536 (1970), and lastly, *Patch* v. *The Metropolitan Life Insurance Company*, 733 F.2d 302 (1984), involving the voluntary act of the use of heroin amounting to an overdose resulting in death.

In all of these cases the Court uses the language that, although death may not have been intended, the

deceased *voluntarily* and *intentionally* committed each of the acts and should have foreseen death as a possible and natural result of their act. As a result the Courts have held that these events were not accidental.

The case at bar is easily distinguishable from these cases on several grounds. First off, none of the defendant's cases addresses, at all, the settled law that states when death caused by external and violent means is proven, then a presumption arises in favor of the beneficiary that the death was accidental and the Court is required to find for the beneficiary unless there is evidence sufficient to justify a conclusion of suicide or evidence sufficient to overcome this presumption. There is no question that the plaintiff has proven that the deceased died by external and violent means, to wit: the automobile collision, to say otherwise is ludicrous. Secondly, this Court does not feel that the evidence establishes that the deceased *voluntarily* and *intentionally* drove on I-64 in the wrong direction on this four-lane highway. The defendant seems to indicate that merely because the evidence may point to the deceased traveling the wrong way that she did so voluntarily and intentionally. The Court sees no basis for arriving at this conclusion. It is just as reasonable to conclude that the deceased unintentionally and by mistake got on the highway in such a manner as to head the wrong way. This is not an unusual occurrence.

To take the matter one step further, if the Court believed that she voluntarily and intentionally placed herself in this position of peril, then she would be in the Court's mind attempting suicide or that she should have foreseen the consequences. We then, of course, come to the presumption in favor of death by accidental means and against suicide. The theories of presumption are fully discussed in the Virginia case of *Life & Casualty Insurance Company of Tennessee* v. *Kathleen Daniel*, 209 Va. 332 (1968).

A further case on point is *Prudential Insurance Company* v. *Tidwell*, 21 P.2d 28 (1933), where an automobile collision occurred resulting in death and a claim being made under the double indemnity provision of a life policy. The facts of that case are not nearly as favorable to the deceased as they are in the case at bar. The Oklahoma case indicates that the principle question for determination by the trial court is whether this collision was

intentionally or accidentally brought about by the deceased and they mention that the evidence is extremely uncertain and susceptible to different interpretations. The Court indicated that there would be a presumption, in the absence of evidence to the contrary, that the collision was accidental.

This Court, of course, realizes that the presumption is rebuttable but as the trier of fact, the Court holds the evidence in the case at bar in no way rebuts the presumption or even equalizes it. The Court concludes that if the defendant were to prevail the Court would have to rely upon surmise and conjecture.

It is, therefore, the opinion of the Court that judgment should be awarded to the plaintiff in the amount of $62,500.